IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

JAN - 4 2016

Clerk, U.S. District and
Bankruptcy Courts

-------------------------------------------------

Case: 1:16-cv-00003
Assigned To : Moss, Randolph D.
Assign. Date : 1/4/2016
Description: Employ. Discrim.

DAVID M. THOMPSON,

  Plaintiff,

109D Colington Pointe Circle (post office WILL NOT deliver to this address)

P.O. Box 2954 (post office WILL deliver to this address)

Kill Devil Hills, N.C. 27948

(252) 715-0954

dmjm1@hotmail.com

  v.

LORETTA E. LYNCH, Attorney General, U.S. Justice Department,

  Defendant.

U. S. Justice Dept.
950 Pennsylvania Ave., NW
Washington, D.C. 20530

-------------------------------------------------


COMPLAINT

NOW COMES Plaintiff and hereby asserts the following:

1.  Among other claims, this is a discrimination in employment case, under the U.S. Constitution

    and various statutes, encompassing but not limited to Title VII of the Civil Rights Act of 1964,

    42 U.S.C. Section 2000e et seq., particularly 42 U.S.C. Section 2000e-16 (gender

    discrimination), and/or the Age Discrimination in Employment Act, 29 U.S.C. Section 623 et

    seq., particularly 29 U.S.C. Section 633a (age discrimination).  Plaintiff seeks denied special

    recognition awards for work achievement, recompense for infliction of distress, lost salary and

    lost benefits, and injunctive relief.

- 2 -

2. Jurisdiction is proper in this Court under 5 U.S.C. Section 552(a)(4)(B), 28 U.S.C. Sections

1331, 1343(a)(4), & 1361, 29 U.S.C. Section 633a(c), and 42 U.S.C. Section 2000e-5(f)(3),

because this action arises under U.S. statutes encompassing but not limited to protection of civil

rights and because the events described hereinafter were committed in Washington, D.C.

3. Venue is proper in this Court under 28 U.S.C. Sections 1391(b)(1) & (2) & (e)(1)(A) & (B),

because the events described hereinafter occurred in Washington, D.C. and because the federal

government is situated in Washington, D.C.

4.  After eight years of administrative morass without even a hearing, Plaintiff has exhausted

himself and his "administrative remedies" (a term that is the ultimate oxymoron).

5.  Defendant is the head of a department [hereinafter, the "Justice Department" or the "agency"]

of the federal government.

FACTS

6. Plaintiff is a trial lawyer, who has practiced in 43 different states.  Plaintiff was Phi Beta

Kappa and Law Review, was a partner in a 30-person private law firm, and came to the U.S.

Justice Department in 1987, under different management from that involved herein.  During his

employment with the agency, Plaintiff was a Senior Attorney, who earned 12 special recognition

awards for work achievement and nominations for each of the Justice Department's three

highest awards (including one in a four billion dollar case) and who consistently received

annual performance appraisals at the highest available rating (e. g., the most recent appraisal

stated: "Mr. Thompson's trial skills are an invaluable asset to the Section as a whole, and to the

less experienced attorneys who are exposed to trial preparation under his careful guidance.").

Plaintiff never engaged in discriminatory harassment of any type, but as a former athlete and

competitive trial lawyer, Plaintiff used what the agency has referred to as "locker room

- 3 -

language." In 1995 at age 47, Plaintiff suffered a near fatal heart attack while on the job with the U.S. Justice Department.

7. In 2008, Plaintiff was a 60 year old male attorney, and Ms. W. was a 34 year old female attorney. They had the same supervisors and the same performance standards. Ms. W. used profanity and had conflicts with other attorneys.

8. On April 2, 2008, Ms. W. reported Plaintiff's language to agency management, but failed to mention the circumstances and failed to mention her own profanity and conflicts. Agency management knew there had been no sexual harassment by Plaintiff and knew of Plaintiff's medical condition (e. g., "permanently impaired cardiac condition"). Nevertheless, Plaintiff was subjected to a hostile environment:

a. On April 3, an improper and hostile interrogation of Plaintiff was conducted by three agency managers, Ms. G., Ms. E., and Mr. B., without due process (e. g., no prior notice, no opportunity to respond in writing, and biased interrogators) and with threat and which aggravated Plaintiff's medical condition and immediately led to medical restriction ("restricted from work due to stress") and five months of sick leave.

b. On April 22, while Plaintiff was on sick leave, an improper and unauthorized investigation of Plaintiff was initiated by Mr. B., without due process (e. g., no prior notice, no opportunity to respond in writing, and no cross examination), which further exacerbated Plaintiff's medical condition ("restricted from work until further notice"), and which was designed to encourage Plaintiff's retirement.

c. In April and May, Plaintiff suggested three times that, if an investigation were to proceed against him, then agency management should conduct a parallel investigation of Ms. W. concerning her conflicts and profanity, but these requests were ignored.

d. During the investigation of Plaintiff, misrepresentations were uttered concerning Plaintiff by agency management.

e. On June 30 and July 15, while Plaintiff still was on sick leave, improper and harassing telephone calls to Plaintiff were made by Ms. G., with threat and with misrepresentation and in which she encouraged Plaintiff's retirement.

f. The forced illness of five months encompassed but was not limited to anxiety and worry and troubled sleep, a racing heart, shortness of breath, and heaviness in the chest.

9. Examples of the hostile environment were: A) an internal April 22 e-mail from Mr. B. in which he stated that the real reason for the investigation was "to keep the pressure on for him [Plaintiff] to leave [retire]," and B) an internal May 5 memo in which "Bob [Mr. B.]" noted his "concerns" that "David [Plaintiff] may not retire." Indeed, management's internally stated "goal" was to obtain a retirement date from Plaintiff.

10. On September 4, 2008, with medical permission, Plaintiff returned to work. Thereafter, Plaintiff endured continuing harassment:

a. On September 8, Plaintiff received an improper reprimand letter from Ms. G., without due process (e. g., no prior notice and biased management), without citation to statute, regulation, or critical performance element, and with threat of an insubordination charge and threat of "removal from federal service."

b. Moreover, in the letter, Ms. G. prohibited Plaintiff from "all trial work," which was a significant reduction in responsibility and which was a "reassignment" in violation of law without prior opportunity to redeem.

c. On September 9, Plaintiff was unjustifiably slighted for and denied two special recognition awards for work achievement, despite Plaintiff's being responsible, through motion and

- 5 -

argument, for reduction in a claim against the government from 74 million dollars to one million dollars in one case and despite Plaintiff's contributing, through preparation and designation, to victory in another case in which all 13 members of the government's legal team except Plaintiff received awards.

d. On September 10, Plaintiff received improper and contradictory instructions from Ms. E., which could have led to either an insubordination charge or a firing offense and which led to constructive discharge.

e. On September 15, Plaintiff was forced to retire and thereby to lose salary and benefits.

f. Two weeks later, Plaintiff was replaced by a 27 year old female attorney and/or a 31 year old female attorney.

11. Examples of the continuing harassment were: A) an internal e-mail exchange between Ms. G. and Mr. B. on August 1, in which after receipt of notification of Plaintiff's intention to return to work from September 2008 to November 2009, Mr. B.'s reaction was "Oh, damn" and Ms. G.'s reaction was "My sentiments precisely," and B) an internal e-mail from Mr. B. to Ms. G. on September 8, in which Mr. B. instructed Ms. G. to tell Plaintiff "about the change in work assignments" and to tell Plaintiff that "it would have been better for everyone if he [Plaintiff] had retired."

12. Ms. W. was treated differently from Plaintiff: she was not denied due process, was not interrogated, was not investigated, was not defamed, was not made ill, was not subjected to harassing calls, was not reprimanded, was not threatened with an insubordination charge, was not threatened with firing, was not banned from trial work, was not reassigned, was not subjected to contradictory management instructions, and was not forced to leave federal service. Moreover, Ms. W. received two special recognition awards.

13. On September 10, 2008, Plaintiff filed a grievance. On October 29, an improper and biased grievance opinion was issued by the agency. For instance, although Mr. B. was one of the individuals against whom the grievance was filed, Mr. B. and/or subordinates under his supervision twice threatened not to process the grievance, Mr. B. covertly selected the grievance reviewer, Mr. B. and/or the subordinates "assured" Plaintiff that the "grievance [would] be adjudicated fairly," and then Mr. B. covertly wrote the grievance opinion, in violation not only of agency grievance procedure but more importantly, of due process. U.S. CONST. amend. V. If anyone should observe due process, it is the U.S. Justice Department.

14. The U.S. Justice Department has a history of tardy disclosures in response to requests under the Freedom of Information Act ("FOIA"). Moreover, Justice Department FOIA regulations almost guarantee illegally late responses. In 2008, according to the government's own reckoning, almost a quarter of all responses to FOIA requests were beyond the statutory time limit. From 2009 to 2015, Plaintiff filed a number of FOIA requests. The agency responses were improper and recalcitrant. For instance on May 1, 2015, Plaintiff filed a FOIA request, but despite repeated re-requests and for more than two months (rather than the 20 working days required by FOIA), the agency failed to provide a document, a response, an objection, or even a formal acknowledgment and did not indicate the amount of information delayed, all in violation of FOIA. As another example, on July 6, 2015, Plaintiff filed a request, but despite repeated re-requests and for almost four months, the agency failed to provide any documents, in violation of FOIA. Finally, from September to November, Plaintiff filed four different FOIA requests (on September 20, September 28, October 25, and November 5). Plaintiff received one response after more than three months and has yet to receive a response to any of the other three requests, all in violation of FOIA. If anyone should follow the law, it is the U.S. Justice Department.

## CLAIM I

15. Paragraphs 1.-14. hereby are adopted by reference.

16. The previously noted agency conduct was deliberate and demeaning (as well as deceitful) and consisted of prohibited employment discrimination through harassment, different treatment, and infliction of distress, in violation of 42 U.S.C. Section 2000e-16 and/or 29 U.S.C. Section 633a.

## CLAIM II

17. Paragraphs 1.-16. hereby are adopted by reference.

18. The previously noted agency interrogation, investigation, reprimand, and grievance procedures were biased and unfair, in violation of the Due Process Clause of the Fifth Amendment and other law, and the previously noted agency FOIA procedures were recalcitrant and in bad faith, in violation of 5 U.S.C. Section 552.

## REQUESTED RELIEF

Plaintiff prays this Court to:

ORDER the U.S. Justice Department to give Plaintiff two special recognition awards for work achievement;

AWARD damages for infliction of distress, lost salary, and lost benefits;

ORDER the U.S. Justice Department to reform its interrogation, investigation, reprimand, and grievance procedures to comport with due process and other law;

ORDER the U.S. Justice Department in the future to comply with the requirements of FOIA;

AWARD attorneys fees and costs; and

ORDER such further and other relief as equity and justice require.

- 8 -

Jan. 4, 2016

David M. Thompson

P.O. Box 2954

Kill Devil Hills, N.C. 27948

(252) 715-0954

dmjm1@hotmail.com