# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID THOMPSON,<br><br>    *Plaintiff*,<br><br>v.<br><br>JEFFERSON SESSIONS, III, Attorney General of the United States,<br><br>    *Defendant.* | Civil Action No. 16-3 (RDM) |

## MEMORANDUM OPINION

Although proceeding *pro se*, the plaintiff in this case, David Thompson, is an attorney who worked at the Department of Justice ("Department") for over twenty years. His experience at the Department took a turn for the worse in 2008 when he received a letter of reprimand for "unacceptable and disrespectful" treatment of his colleagues, and he was, among other things, relieved of all trial work. Thompson took a period of sick leave, filed a grievance, and retired in September 2008. Years later, in 2015, Thompson filed a series of Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests with two Justice Department components—the Environment and Natural Resources Division ("ENRD"), and the Justice Management Division ("JMD"). He then brought this suit in January 2016, alleging that the Department took adverse employment action against him because of his sex and age, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 633a *et seq.*; violated his due process rights in the investigation, reprimand, and grievance process, U.S. Const. amend. V; and violated FOIA by applying

"procedures [that] were recalcitrant and in bad faith," 5 U.S.C. § 552. Dkt. 7 at 7 (Am. Compl. ¶¶ 15–18).

In a prior opinion, the Court granted summary judgment in favor of the Department on Thompson's Title VII, ADEA, and due process claims. *Thompson v. Sessions*, 278 F. Supp. 3d 227, 252 (D.D.C. 2017) ("*Thompson I*"). The Court also held that Thompson's FOIA claim did not challenge the Department's response to any of the specific FOIA requests that he submitted in 2015, but rather sought only "an 'injunction' that would require the Department to respond to future FOIA requests in a timely manner." *Id*. at 251. Because such a "policy or practice" claim "focuses on whether 'agency policy or practice will impair the party's lawful access to information *in the future*,'" *id.* at 252 (emphasis added) (quoting *Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012)), the Court explained that it could not reach the merits of Thompson's FOIA claim without first deciding whether he faces a "certainly impending" threat of "future injury," *id.* That is, does he have standing to pursue a policy or practice claim?

The parties have now filed renewed motions for summary judgment with respect to Thompson's sole remaining claim. Dkt. 37; Dkt. 39. In doing so, they address both the merits of that claim and Thompson's standing to seek an injunction compelling the Department to respond to all FOIA requests in a timely manner. As explained below, the Court concludes that Thompson has failed to submit any evidence that he faces an imminent threat of future injury due to the Department's delay in responding to FOIA requests. As a result, the Court will dismiss Thompson's policy or practice claim for lack of Article III jurisdiction.

## I. BACKGROUND

The Court has previously described the factual background of this case at length, *Thompson I*, 278 F. Supp. 3d at 232–41, and will only briefly highlight the facts relevant to Thompson's policy or practice claim and his standing to pursue that claim.

**A.     FOIA Requests**

In 2015, Thompson submitted five FOIA requests to the Department of Justice, including two requests to ENRD and three requests to JMD:[1]

1.      *ENRD Requests*

Thompson submitted his first request to ENRD on May 1, 2015, seeking seven categories of records "including Environmental Defense Section rosters, U.S. trial exhibit lists, awards policies, and various documents relating to Mr. Thompson." Dkt. 37-2 at 3 (Wardzinski Decl. ¶ 5); *see also id.* at 5–6 (Wardzinski Decl. Ex. 1). On July 2, ENRD responded to the request, releasing eight documents in full and four documents in part, redacting portions of those documents pursuant to Exemption 5 of FOIA. *Id.* at 19 (Wardzinski Decl. Ex. 2). The response informed Thompson of his right to appeal to the Department's Office of Information Policy within 60 days. *Id.* at 20 (Wardzinski Decl. Ex. 2).

On September 24, 2015, Thompson submitted a second request to ENRD, seeking "attachments to an August 12, 2009 letter from ENRD to an EEO investigator." *Id.* at 3 (Wardzinski Decl. ¶ 8); *see also id.* at 22–24 (Wardzinski Decl. Ex. 3). On December 18, 2015,

---

[1] Thompson asserts that he submitted four requests to JMD in 2015—not three. Dkt. 39-2 at 3–4. To support this assertion, Thompson cites "Ex. P281 & Defs.' 4/3/18 Br., p. 5." Dkt. 44 at 2. As far as the Court can tell, however, no exhibit "P281" or "281" was filed along with his brief. *See* Dkt. 39-3. But even assuming the existence of a fourth JMD request, because Thompson alleges that the Department has since responded to it, Dkt. 44 at 2, it makes no difference in the Court's analysis.

ENRD responded, releasing ten responsive documents, "four of which were redacted pursuant to Exemption 6, and one of which was redacted pursuant to Exemption 5," and again informing him of his right to appeal within 60 days. *Id.* at 3 (Wardzinski Decl. ¶ 9); *see also id.* at 27 (Wardzinski Decl. Ex. 4). On December 31, 2015, Thompson sent a letter to ENRD in which he argued that the "neither . . . exemption[] applie[d]" and that the attachments "should have been provided to [him] without redactions." *Id.* at 30 (Wardzinski Decl. Ex. 5).

On December 20, 2017, Thompson filed an administrative appeal "partially concerning" the Department's response to his two ENRD requests, in which he "question[ed] the [Department's] adequacy of withholdings and/or redactions." Dkt. 39-1 at 2 (Pl.'s SUMF ¶¶ 6–7); *see also* Dkt. 39-3 at 6–7 (Pl.'s SUMF Ex. D).

2. *JMD Requests*

Thompson submitted three (or four, *see* n.1) FOIA requests to JMD, dated September 20, 2015, October 25, 2015, and November 5, 2015. Dkt. 37-3 at 2–3 (Sim Decl. ¶ 3); *id.* at 7 (Sim. Decl. Ex. A). In those requests, he sought (1) "an email from Margaret McCarthy [the ENDR Human Resources Director];" (2) "any and all records or documents received by or generated by Ms. [Annesley] Schmidt [a contract EEO investigator] in her investigation, but not included in her Report;" and (3) "any and all records or documents received by or generated by [EEO Counsel] Ms. Donna Gray-Flowers concerning [Thompson]." Dkt. 37-3 at 2–3 (Sim Decl. ¶ 3); *id.* at 7 (Sim. Decl. Ex. A). On November 23, 2015, JMD responded by email, acknowledging Thompson's October 25 request, and assigning the request a tracking number. *Id.* at 11 (Sim Decl. Ex. B). Thompson's September 20 and November 5 requests "were assigned the same consolidated tracking number." *Id.* at 3 (Sim Decl. ¶ 4). On November 18, 2016, ten months after Thompson initiated this litigation, JMD responded to his FOIA requests, releasing the records with redactions made pursuant to Exemptions 5 and 6. *Id.* at 4 (Sim. Decl. ¶ 7); *id.* at

4

13–14 (Sim Decl. Ex. C).  On January 16, 2017, Thompson filed an administrative appeal, challenging "the adequacy of withholdings and/or redactions."  Dkt. 39-1 at 2 (Pl.'s SUMF ¶¶ 6, 7); *see also* Dkt. 39-3 at 3 (Pl.'s SUMF Ex. B).

**B.     The Present Suit**

On January 4, 2016, Thompson filed this action, alleging that the Department violated Title VII, the ADEA, the Due Process Clause of the Fifth Amendment, and, finally, FOIA.  Dkt. 1 at 7 (Compl. ¶¶ 16, 18).  As relevant here, Thompson alleges that the "Department has a history of tardy disclosures in response to FOIA requests" and that the "Department['s] FOIA regulations almost guarantee illegally late responses."  Dkt. 7 at 6 (Am. Compl. ¶ 14).  He further alleges that, in 2008, almost a quarter of all FOIA responses from the federal government were late and that he did not receive timely responses to the FOIA requests he submitted to the Department in 2015.  *Id.* (Am. Compl. ¶ 14).  Based on these allegations, he avers that the Department's "FOIA procedures were recalcitrant and in bad faith," and he requests that the Court order the "Department in the future to comply with the requirements of FOIA."  *Id.* at 7 (Am. Compl. ¶ 18 & Request for Relief).  At oral argument on the parties' first set of cross-motions for summary judgment, Thompson clarified that he is seeking "an injunction" ordering "timely production" of future FOIA requests.  Dkt. 36 at 27; *see also id.* at 28, 63.

In *Thompson I*, the Court granted summary judgment in favor of the Department on Thompson's Title VII, ADEA, and due process claims.  *Thompson I*, 278 F. Supp. 3d at 232.  With respect to Thompson's FOIA claim, however, the Court concluded that it could not reach the merits.  The Court explained that Thompson had failed to "show[] that he [had] standing to pursue a 'policy or practice' FOIA claim."  *Id.* at 252.  Indeed, when asked about Article III standing at oral argument on the first round of summary judgment motions, Thompson simply

5

replied that "he 'might' submit future FOIA requests to the department." Dkt. 36 at 29. Despite the lack of evidence sufficient to support standing, the Court offered Thompson (and the Department) a further opportunity to present "evidence" sufficient "to permit the Court to determine whether Thompson, in fact, face[s] the type of 'certainly impending' future injury that would support a finding that he had standing when he filed this action." *Thompson I*, 278 F. Supp. 3d at 252. The Court, accordingly, denied the Department's motion for summary judgment with respect to Thompson's FOIA claim.

The Department has now filed a renewed motion for summary judgment, Dkt. 37, and Thompson has filed a renewed cross-motion for summary judgment, Dkt. 39.

## II. ANALYSIS

The only claim that remains pending is Thompson's policy or practice claim, which seeks to compel the "Department in the future to comply with the requirements of FOIA." Dkt. 7 at 7 (Am. Compl.) ("Requested Relief"). Although Thompson had standing to challenge the adverse employment actions addressed in *Thompson I*, "a plaintiff must demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 185 (2000). The party seeking to invoke the Court's Article III jurisdiction, moreover, "bears the burden of establishing" standing, and the "manner and degree of evidence required" to satisfy that burden varies with the relevant "stage[] of the proceeding." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Because this case is before the Court on summary judgment, this means that Thompson bears the burden of proffering "specific facts" "by affidavit or other evidence" sufficient to show that he has standing to seek an injunction mandating that the Department of Justice comply with FOIA's timeliness requirements in the future. *Id.* The "irreducible constitutional minimum" of standing, in turn, requires evidence "that the plaintiff

6

suffered (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61). Moreover, where standing turns on a claim of future injury, the "threatened injury must be certainly impending;" "[a]llegations of possible future injury" will not suffice. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks and citation omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Similar considerations underpin the related doctrine of mootness, although that doctrine recognizes certain exceptions not applicable to standing. *See Friends of the Earth*, 528 U.S. at 189–90.[2] Whether framed as a question of standing or mootness, the Court must consider whether each claim the plaintiff seeks to pursue raises a live "case" or "controversy" within the meaning of Article III.

The question presented here turns on how the Article III "case" or "controversy" requirement applies to FOIA policy or practice claims, which by definition seek prospective relief based on the likelihood that an agency will violate the plaintiff's rights under FOIA in the future. To be sure, the D.C. Circuit recently clarified that the type of conduct that Thompson seeks to remedy—"agency conduct resulting in long delays in making requested non-exempt records available"—"may serve as the basis for a policy or practice claim." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 777–78 (D.C. Cir. 2018). A plaintiff's ability to bring such a challenge, however, comes with an important caveat: the plaintiff must allege, and ultimately establish, "that the pattern of delay will interfere with *its* right under FOIA to promptly obtain non-exempt records from the agency *in the future*." *Id*. at 780 (emphasis

---

[2] Recognized exceptions to the mootness doctrine include: "voluntary cessation of a challenged practice," and actions "capable of repetition yet evading review." *See Friends of the Earth*, 528 U.S. at 189–90. Thompson does not invoke either exception.

7

added).  That caveat—which coincides with the requirements of Article III—was readily satisfied in *Judicial Watch*.  As the D.C. Circuit observed, Judicial Watch had—"[f]or years"—filed FOIA requests seeking the type of information at issue in that case; it had brought "five separate" lawsuits challenging the agency's failure to respond in a "timely manner;" and the agency's practice of "repeatedly withholding 'nearly identical' records, without explanation, for unreasonable periods of time," was "harmful to Judicial Watch's mission and work."  *Id.* at 773, 779.

As in *Judicial Watch*, it is undisputed that the Department has now responded to all of the FOIA requests mentioned in Thompson's amended complaint.  Dkt. 37-1; Dkt. 39-4.  Here, however, there is insufficient basis to conclude that the Department's "policy or practice" "will impair [Thompson's] lawful access to information in the future."  *Judicial Watch*, 895 F.3d at 777 (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)).  The FOIA requests referenced in the complaint sought information relating, at least in part, to Thompson's discrimination and due process claims, *see* Dkt. 37-2 at 5–6 (Wardzinski Decl. Ex. 1); *id.* at 22–24 (Wardzinski Decl. Ex. 3); Dkt. 37-3 at 7 (Sim Decl. Ex. A), which the Court has now dismissed, *Thompson I*, 278 F. Supp. 3d at 252.  The complaint, moreover, does not allege that Thompson had—or has—any interest in filing FOIA requests unrelated to his discrimination and due process claims.  At oral argument on the parties' first round of summary judgment motions, which was held in August 2017, the Court noted that Thompson last filed a FOIA request in 2015 and asked if he planned to file any requests in the future.  Dkt. 36 at 29.  Thompson merely responded, "I might."  *Id.*  And, when the Court asked what records Thompson "might" seek, Thompson referred to additional materials relating to the pending litigation (*i.e.*, missing Bates ranges from a disk of documents provided by the government and

documents relating to whether "two assistant chiefs . . . ever filed a memo, an email or . . . report on [the offensive] language" used by the individual who Thompson asserts should have received the same discipline he received). *Id.* at 30. Notwithstanding this paucity of evidence of future harm, the Court nonetheless declined to dismiss Thompson's policy or practice claim for lack of standing (or as moot) and provided Thompson with an opportunity to present further evidence.

Despite this opportunity, Thompson has failed to offer evidence that he will suffer a continuing injury due to the Department's delay in responding to FOIA requests. He does not attest that intends to file *future* requests and, if so, what specific requests he will file, and he does not identify any interest he has in obtaining Department of Justice records beyond his interest in this litigation. In October 2017, a week after the Court issued its initial opinion, Thompson did file a further FOIA request, which seems to have sought the records that Thompson referenced in response to the Court's question at oral argument in August 2017. Dkt. 41-2 at 2 (Blaha Decl. ¶ 4); *id.* at 5–6 (Blaha Decl. Ex. A). But the undisputed evidence shows that the Department responded to the request in writing in November 2017 and that it released responsive records in December 2018. Dkt. 41-2 at 2–3 (Blaha Decl. ¶¶ 4–8). Although the parties disagree about whether the response was timely and complete, that is not the relevant question for present purposes. The question is whether the request shows that Thompson will suffer a continuing injury without an injunction, and, because it is no longer pending, and because it does not reflect that Thompson will file future requests, it does not.[3]

---

[3] In his reply brief, Thompson asserts that "today" he "has submitted a new FOIA request," which "is similar to the subpoena aborted a number of weeks ago." Dkt. 44 at 6. This is too little, too late. It is too late because it comes in a reply brief, after the Department filed its final brief. And it is too little because there is no evidence before the Court that the FOIA request remains pending, that the Department failed to respond in a timely manner, or, indeed, that explains what Thompson means by "the subpoena aborted a number of weeks ago."

Although this is perhaps a closer case than some, *see, e.g.*, *Coleman v. DEA*, 134 F. Supp. 3d 294, 306–07 (D.D.C. 2015); *Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards and Tech.*, 775 F. Supp. 2d 174, 187 (D.D.C. 2011), the Court cannot conclude that Thompson has shown that he "will suffer a continuing injury from [the Department's] allegedly unlawful policy." *Newport Aeronautical Sales*, 684 F.3d at 164. This is not a case, for example, in which a company's "business depends on continually requesting and receiving documents" from the agency. *Id.* It is not a case in which the "mission and work" of the plaintiff involves requesting records from the agency. *Judicial Watch*, 895 F.3d at 779. And, it is not a case in which the plaintiff has posited, and the government has not disputed, that the policy "continues to have an adverse effect upon plaintiff." *Payne*, 837 F.2d at 491 n.8. To the contrary, although provided the opportunity to do so, Thompson has never proffered a declaration or other evidence attesting or showing that he will submit future FOIA requests to the Department. The FOIA requests directly at issue in the case, moreover, were all filed in 2015, and all have long since been processed. He has, as far as the Court can discern, filed two FOIA requests since then, but there is no evidence that either remains pending (we know that one is not), and, more importantly, there is no evidence that these additional FOIA requests are indicative of whether Thompson "will continue filing FOIA requests" that the Department will likely fail to process in a timely manner. *Tipograph v. Dep't of Justice*, 146 F. Supp. 3d 169, 176 (D.D.C. 2015). Unlike cases that have permitted policy or practice claims to proceed on the premise that the plaintiff will suffer a "continuing injury due to [the challenged] practice," *Payne*, 837 F.2d at 491, Thompson's only evident interest in submitting FOIA requests to the Department is to find support for the discrimination and due process claims that he brought in this case. There is no basis to conclude, moreover, that Thompson plans to seek additional records in support of the

claims that the Court dismissed almost a year ago. *Thompson I*, 278 F. Supp. 3d at 252. Absent evidence that Thompson will, in fact, seek additional records from the Department in the future, this Court lacks Article III jurisdiction to consider his policy or practice claim. *See Payne*, 837 F.2d at 491.

Thompson argues that it is not necessary for a plaintiff asserting a policy or practice claim to have "outstanding FOIA requests to which there was no response." Dkt. 39-2 at 9. That is, of course, true. *See, e.g.*, *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 132–35 (D.D.C. 2018). Although the absence of outstanding FOIA requests does not preclude a "policy or practice" claim, a plaintiff must show that he "will be subjected in the near future to the particular agency policy or practice that [he] challenges under FOIA," *id.* at 134 (quoting *Tipograph*, 146 F. Supp. 3d at 175), and, as explained above, Thompson has failed to do so. Nor is it an answer to assert, as Thompson does, that because his FOIA requests "are on administrative appeal . . . [,] those requests are 'outstanding'" and therefore, "standing itself continues [to be] beyond question." Dkt. 44 at 6. The Department has responded to all of the requests that are on administrative appeal, and Thompson's policy or practice claim does not take issue with the Department's handling of the appellate process. What matters for present purposes is whether Thompson will suffer a future injury if the Department's practice of failing to respond to FOIA requests in a timely manner is not enjoined, *see Payne*, 837 F.2d at 491; it is that jurisdictional prerequisite that precludes the Court from reaching the merits of Thompson's claim.

Finally, even if the Court were to conclude that it has jurisdiction to consider Thompson's claim for injunctive relief, Thompson could not prevail. "The equitable remedy" of an injunction "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged

11

again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (plaintiff seeking permanent injunction must demonstrate irreparable injury, the absence of a remedy at law, balance of hardships support relief, and public interest would not be disserved by permanent injunction). For the same reasons discussed above, Thompson has not met his burden of demonstrating an entitlement to injunctive relief. The Court must ask itself what, if anything, there is for it to enjoin. There is no basis, of course, for the Court to enjoin the Department from violating the rights of non-parties to have the Department process their FOIA claims in a timely manner. And there is no evidence that an injunction directing that the Department process Thompson's future FOIA requests in a timely manner would have any meaning in the absence of concrete evidence that he will file any such requests.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment, Dkt. 37, and deny Plaintiff's cross-motion for summary judgment, Dkt. 39.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 27, 2018